UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SHELIA STINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-CV-246-CCS |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 10 & 11] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Shelia Stinson ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT** the Plaintiff's motion, and **DENY** the Commissioner's motion.

**I.   PROCEDURAL HISTORY**

On December 10, 2012, the Plaintiff filed an application for disability insurance benefits, claiming a period of disability which began January 3, 2005. [Tr. 133-35]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

87]. During the hearing, the Plaintiff amended her alleged onset date to May 31, 2009, the same day as her date last insured. [Tr. 36]. Following the hearing [Tr. 27-60], the ALJ rendered a decision on November 17, 2014, finding that the Plaintiff was not disabled [Tr. 14-26]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-4]; thus, the ALJ's decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on May 17, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 3, 2005 through her date last insured of March 31, 2009.
>
> 3. Through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.
>
> 4. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 3, 2005, the alleged onset date through March 3, 2009, the date last insured.

[Tr. 14-26].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. ANALYSIS

The Plaintiff seeks review of the ALJ's decision to end the disability determination at step two of the sequential evaluation, finding that the Plaintiff was not disabled within the meaning of the Social Security Act because she did not have a medically determinable impairment that was severe. Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.*

With specific regard to step two, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered nonsevere "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). The claimant has the "responsibility to produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30,

2010), *adopted by*, No. 3:09-CV-317, 2010 WL 2836137 (E.D. Tenn. July 15, 2010) (emphasis in the original).

Turning to the present matter, that Plaintiff contends that substantial evidence does not support the ALJ's step two finding. The Plaintiff cites to medical records dated before and after March 31, 2009, her alleged onset date and date last insured, that document a history of complaints and treatment for neuropathic pain, including fatigue and numbness and pain in her back, legs and toes since 2005. [Doc. 11 at 16-17 (Tr. 221-302, 305-13, 347-53, 538)]. Relying on these treatment records and the medical opinion offered by her treating physician, Udit Chaudhuri, M.D., whose opinion the Plaintiff contends was not properly weighed by the ALJ, the Plaintiff submits that her symptoms have been consistent and constant through the years and demonstrate that she has a medically determinable impairment that is severe. [*Id.* at 13-15, 18].

The evidence cited by the Plaintiff includes treatment records from Rheanel Tolar, M.D., who, in 2005, noted complaints of constant numbness in the Plaintiff's toes and a history of a pinched nerve and back pain. [Tr. 254-56]. Dr. Tolar diagnosed back pain and "Neuritis, Neuralgia, Radiculitis, Unspecified." [Tr. 256]. In 2008, the Plaintiff began treatment with Dr. Chaudhuri, who diagnosed leg pain, chronic, dysesthesias, and questionable neuropathy of unknown etiology. [Tr. 538]. In December 2008, Dr. Chaudhuri referred the Plaintiff to neurologist Darrel Thomas, M.D., who suspected that the Plaintiff suffered from a small fiber neuropathy but ordered further testing to confirm. [Tr. 310]. Two separate skin biopsies were taken for evaluation in March 2009. [Tr. 309]. The Plaintiff returned for her results in May 2009, the results confirming a severe dependent sensory neuropathy affecting the myelinated fibers. [Tr. 308]. The Plaintiff was diagnosed with small fiber immune mediated neuropathy. [Tr. 307]. Despite following through with recommended treatment, including various medications, the

Plaintiff continued to experience fatigue and dysesthetic pain. [Tr. 305-06].

The Plaintiff's treating physician, Dr. Chaudhuri, also noted continued complaints of pain. [Tr. 508-19, 522-24, 529-33]. The Plaintiff eventually was seen by neurologist Elliot Dimberg, M.D., in February 2012. [Tr. 352-54]. Dr. Dimberg questioned whether the Plaintiff suffered from small fiber neuropathy. [Tr. 353-54]. Dr. Dimberg observed, however, that he did not have Dr. Thomas's test results or medical records for review. [Tr. 352-53]. Upon his own testing, Dr. Dimberg was of the opinion that the Plaintiff "may" instead by suffering from central sensitization syndrome. [Tr. 347].

On September 10, 2014, Dr. Chaudhuri completed a form entitled, "Peripheral Neuropathy Medical Assessment Form," wherein he responded to a variety of short answer and multiple-choice questions regarding the Plaintiff's functional ability to perform work-related activities. [Tr. 564-67]. Dr. Chaudhuri opined that the Plaintiff has peripheral neuropathy, small fiber neuropathy, and chronic inflammatory demyelinating poly neuropathy that causes severe pain in the Plaintiff's legs and arm. [Tr. 564]. As a result, Dr. Chaudhuri opined that the Plaintiff could not handle specific "workplace stress," including that she could not be exposed to public contact, close interaction with coworkers or supervisors, or work hazards (such as heights or moving machinery), and would be unable to perform fast pace tasks, routine and repetitive tasks at a consistent pace, detailed or complicated tasks, or meet strict deadlines. [Tr. 565]. In addition, Dr. Chaudhuri opined that the Plaintiff could stand or walk less than two hours in an eight hour workday but no more than five minutes at one time, she could sit for less than two hours in an eight-hour workday but no more than 10 minutes at one time, she would need to take eight or nine unscheduled breaks during a workday with each break lasting at least 30 minutes, she would need to elevate her legs with prolonged sitting, she must use a wheelchair for more than 100 feet, she could rarely lift or

6

carry up to 10 pounds, she could occasionally twist or bend, and she would be absent from work more than four days per month. [Tr. 565-67]. Dr. Chaudhuri opined that these limitation have existed since September 22, 2008. [Tr. 567].

In the disability decision, the ALJ found that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." [Tr. 19]. In relevant part, the ALJ summarized the foregoing medical evidence and relied on the opinions of non-examining state agency physicians who opined that there was insufficient information to determine the existence of a medically determinable impairment. [Tr. 21, 66, 73]. In addition, the ALJ rejected the medical assessment from Dr. Chaudhuri on the basis that said opinion "was more restrictive than supported by treatment records from Dr. Chaudhuri," "Dr. Chaudhuri overstepped his boundaries as a family practitioner when he suggested such extreme mental health limitations," and the "entire assessment was questionable considering laboratory findings were at most mild to benign particularly when treating records from Dr. Dimberg questioned a number of the diagnosis." [Tr. 21].

As an initial matter, the Court notes that this case in unique in that the relevant time period consists of only one day—March 31, 2009, which serves as both the alleged onset date and date last insured. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see* Soc. Sec. Rul. 83-20, 1983 WL 31249 at *3 (Jan. 1, 1983) ("A [T]itle II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)."). Accordingly, the Court's inquiry at step two is whether substantial evidence supports the ALJ's determination that as of March 31, 2009, the Plaintiff did not have a severe impairment. *See Strong v. Comm'r of*

*Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."); *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) (holding that post-dated evidence "must relate back to the claimant's condition prior to the expiration of her date last insured" to be relevant) (citing *King v. Sec'y of Health and Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990)).

The Court finds that substantial evidence does not support the ALJ's decisions. Each medical source who examined the Plaintiff agreed that the Plaintiff suffered from a neuropathy based impairment that caused fatigue, numbness, and pain. Notably, Dr. Thomas's diagnosis of small fiber immune mediate neuropathy occurred around the relevant time period under review and was based on biopsy testing. *See* 20 C.F.R. § 404.1508 ("Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."). Although Dr. Dimberg questioned this diagnosis years later, Dr. Dimberg did not have the benefit of reviewing Dr. Thomas's medical records to determine the accuracy or findings made by Dr. Thomas. Importantly, Dr. Dimberg's alternative diagnosis of possible central sensitization syndrome does not undermine the severity or frequency of the Plaintiff's complaints of fatigue, numbness, and pain, but rather the source of her symptoms. This evidence, taken together, would suggest that the Plaintiff suffers from an abnormality that has more than a minimal effect on her ability to perform work-related activities.

In discussing Dr. Thomas's treatment records, the ALJ noted that "[o]verall, the claimant reported improved symptoms but experienced some burning." [Tr. 21]. Treatment notes indicate, however, that the burning was more severe than alluded by the ALJ. Specifically, the Plaintiff experienced burning in her thighs, left side of her face, and left upper extremity that interfered with her ability to bend or stand. [Tr. 305]. The ALJ also appears to have given deference to Dr.

Dimberg's 2012 evaluation which questioned Dr. Thomas's diagnosis in finding that the Plaintiff did not have a severe impairment. [Tr. 21]. However, Dr. Dimberg did not make any conclusive findings and his evaluation did not undermine the severity of the Plaintiff's symptoms or their alleged limiting effect but instead offered an alternative diagnosis.

The only evidence that appears to unequivocally support the ALJ's step two determination that the Plaintiff does not have a severe impairment is the opinions of the non-examining state agency physicians. But the ALJ's decision to adopt these opinions over the opinion rendered by Dr. Chaudhuri is not supported by substantial evidence. The Court agrees with the Plaintiff that the ALJ did not provide "good reasons" for rejecting Dr. Chaudhuri's opinion.

In reaching this conclusion, the Court observes that under the Social Security Act and its implementing regulations, a treating physician's opinion as to the nature and severity of an impairment is subject to "controlling weight" if the opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be

9

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

As pointed out by the Plaintiff [Doc. 11 at 13], the ALJ did not assign a specific weight to Dr. Chaudhuri's opinion which "alone constitutes error." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011); *see also Blakley*, 581 F.3d at 408 (holding that "[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected"). Nonetheless, such an error is not a reversible one where the ALJ makes "sufficiently clear his reasons for discounting the opinion." *Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140, at *5 (6th Cir. Jan. 12, 2016). In the instant case, however, the Court finds the ALJ did not provide a reasoned or supported basis for rejecting Dr. Chaudhuri's opinion.

The Plaintiff argues that the ALJ did not cite to any specific record evidence to support his conclusion that Dr. Chaudhuri's opinion was more restrictive than findings made in his treatment records. [Doc. 11 at 13]. Indeed, the ALJ does not identify any specific treatment records, or findings made therein, that is at odds with or undermines the findings expressed by Dr. Chaudhuri in his medical assessment.

The Plaintiff also argues that Dr. Chaudhuri did not assess any "mental limitations" to support the ALJ's conclusion that Dr. Chaudhuri "overstepped his boundaries as a family practitioner when he suggested such extreme mental health limitations." [*Id.* (citing Tr. 22)]. The ALJ does not identify which limitations opined by Dr. Chaudhuri are "mental health limitations," but the Court assumes that the reference was made with regard to the activities characterized as

"workplace stress" in the medical assessment, *see supra* note 6. The Court notes that such limitations are not within the exclusive purview of mental health specialists. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("[I]t is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'") (quotation omitted). More importantly, perhaps, is that symptoms from a physical impairment may manifest themselves into what is typically characterized as "mental limitations." Therefore, it is not outside a family physician's purview to opine on such matters. Whether such limitations could logically flow from the Plaintiff's specific impairments in this case, however, depends on the supportability found within Dr. Chaudhuri's treatment records which, as noted above, were not addressed by the ALJ.

Lastly, the ALJ found that Dr. Chaudhuri's opinion was questionable considering that laboratory findings were "mild to benign," particularly in light of Dr. Dimberg questioning the diagnosis rendered by Dr. Thomas. [Tr. 22]. However, diagnostic testing performed by Dr. Thomas yielded evidence of small fiber immune mediated neuropathy while testing by Dr. Dimberg indicated central sensitization syndrome. While the doctors differed on the etiology of the Plaintiff's symptoms, neither doctor opined "mild to benign" findings. Moreover, Dr. Dimberg's opinion on Dr. Thomas's diagnosis was inconclusive and was not based on a review of the entire record. Therefore, Dr. Dimberg's findings, alone, do not constitute "good reason" for rejecting Dr. Chaudhuri's opinion.

Accordingly, the Court finds that Plaintiff's assignment of error is well-taken. The Court will order that this case be remanded to the ALJ to reevaluate step two of the disability determination and reconsider Dr. Chaudhuri's medical assessment by assigning the opinion a specific weight and providing "good reasons," supported by the record, for the weight assigned.

## V. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 10**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**. The decision of the Commissioner will be **REMANDED** for the ALJ to reconsider whether the Plaintiff has a medically determinable impairment at step two and reassess Dr. Chaudhuri's opinion.

**ORDER ACCORDINGLY.**

s/ C. Clifford Shirley, Jr.<br>
United States Magistrate Judge